**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| KELLY KANTZ, <br><br> Plaintiff(s), <br><br> v. <br><br> UNIVERSITY OF THE VIRGIN ISLANDS, <br><br> Defendant(s). | CIVIL NO. 2008/47 <br><br> **ACTION FOR DAMAGES** <br><br> <u>JURY TRIAL DEMANDED</u> |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF</u>**

Plaintiff, Kelly Kantz, by and through undersigned counsel, submits this Response to Defendant University of the Virgin Islands' ("UVI") Supplemental Brief. This Response is in further support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

**<u>INTRODUCTION</u>**

Defendant incorrectly claims that two recent Supreme Court cases bear a significant and favorable impact for the University in the pending Motion for Summary Judgment. First, Defendant's Supplemental Brief relies upon only one recent Supreme Court case; that is *Vance v. Ball State Univ., 133 S. Ct. 2434, 186 L.Ed. 2d 565 (U.S. 2013).* Second, Plaintiff is grateful that Defendant has brought *Vance* to the Court's attention as it makes crystal clear that not only is summary judgment not warranted in this case, but Defendant is liable under multiple theories for harassment and infliction of a racially hostile work environment.

Third, the *Vance v Ball State Univ.*, is limited to only analyzing a claim of workplace harassment under Title VII, and Plaintiff has set forth evidence showing a genuine dispute

LEE J. ROHN AND
ASSOCIATES, LLC
1101 King Street
Christiansted
VI 00820-4933
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 2

of fact as to her claims for race discrimination and retaliation in addition to harassment under Title VII. Thus, Defendant's Supplemental brief only addresses one aspect of Plaintiff's Title VII claims. Plaintiff also has shown a genuine dispute of fact as to her claims of discrimination under the local Civil Rights Act.

    I.      The Facts and Findings in *Vance v. Ball State University*

The facts of *Vance v. Ball State University* are vastly different than in the instant *Kantz* case. It's findings, however, as to who is liable under Title VII applies, and shows that Defendants are strictly liable for work place harassment.

In this case, Kantz is a white professor in the Education Department of UVI claiming reverse race discrimination, *and* a racially hostile work environment amongst other claims. RSOF ¶ 2 [1]. Kantz has identified the perpetrators of the discrimination and work place harassment as Dr. Cynthia Jackson, the Chairperson, and Dr. Rita Howard, the Assistant Chairperson, of UVI's Division of Education, as well as UVI Provost Dr. Al-Hassan Musah and Dr. Ragster, the University President. RSOF ¶ 3.

Kantz has alleged and set forth ample evidence that all perpetrators had the power to take tangible employment action against her and did in fact do so when they deprived her of income and economic benefits by decreasing her course load and teaching responsibilities, refusing to let her teach summer school, taking away her student advisees, telling students she was incompetent, and forcing her to resign. RSOF ¶ 3; CSOF ¶ 5, 7. Dr. Jackson also gave Plainitff an unfair classroom observation review which was found to

---

[1] All references to the record herein are to Plaintiff's Response to Defendant's Statement of Undisputed Facts (RSOF) and Plaintiff's Counter-Statement of Facts (CSOF). Plaintiff fully incorporates herein her RSOF and CSOF. All Exhibits were previously filed with the Court. *See* Doc. Nos. 105-1 thru 25, 106, 106-1 thru 34.

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 3

be biased and ordered thrown out by the Faculty Review Committee and a new one conducted. *Id.* Provost Musah refused to allow Dr. Kantz to be re-evaluated despite the fact that the evaluations are a major part of a professor's tenure and promotion consideration according to UVI's own rules. RSOF ¶ 3.

As a result of these unfair actions, Dr. Kantz suffered a significant loss in income, a significant change in benefits, and a constructive discharge. Dr. Kantz and other white professors similarly affected by Drs. Jackson, Howard, and Provost Musah's discrimination and harassment, complained directly to Dr. Ragster about the racial discrimination. RSOF ¶ 21. Dr. Ragster admitted she did not address the complaints, even though she knew the professors was looking to her to correct the discrimination, thereby ratifying Jackson's, Howard's and Musah's violations of the Plaintiff's civil rights under Title VII. RSOF ¶ 21.

In *Vance*, the facts show a different story. The plaintiff Maetta Vance is an African American woman who began working for Ball State University (BSU) as a substitute server in the University's Banquet and Catering division of Dining Services. She was promoted to part-time catering assistant in 1991 and then in 2007 given the position of full time catering assistant. Vance complained about interactions with a fellow BSU employee, a white woman named Saundra Davis. Specifically, Vance complained that Ms. Davis, who was a catering specialist, glared at her, slammed pots and pans near her, intimidated her, blocked her on an elevator and gave her weird looks. Both parties agreed that Davis could not "hire, fire, demote, promote, transfer or discipline" Vance. It was undisputed that Davis lacked authority to take any tangible employment actions against Vance.

Vance filed complaints with the EEOC and eventually filed a lawsuit alleging that

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 4

Davis was her supervisor and that BSU was liable for Davis creating a racially hostile work environment. The District Court granted summary judgment for BSU and the Seventh Circuit affirmed, both courts finding that Davis was not Vance's supervisor as she could not "hire, fire, demote, promote, transfer or discipline" Vance, and thus, BSU could not be held vicariously liable. The courts also held that BSU could not be found negligent as it had reasonably responded to incidents of which it had knowledge.

The United States Supreme Court granted certiorari to address the issue in harassment cases of who is a "supervisor" under Title VII of the Civil Rights Act of 1964. The Court stated, "[i]n this case, we decide a question left open in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), namely, who qualifies as a 'supervisor' in a case in which an employee asserts a Title VII claim for workplace harassment?" *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (U.S. 2013). The Court found that a "supervisor" for purposes of Title VII harassment suits is anyone who is empowered to take tangible employment actions against the victim. *Id.*

Tangible employment actions are defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance, supra*, at 2442, citing *Ellerth*, 524 U.S., at 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633.

The reason for identifying if the harasser is a supervisor is that under Title VII, an employer's liability depends on the status of the harasser in a workplace harassment suit.

The breakdown goes like this:

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 5

1) If the harasser is a supervisor who took a tangible employment action against the plaintiff, then the employer is strictly liable for the harassment. The Supreme Court in *Vance* explained its reasoning as follows: "When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. . . . A tangible employment decision requires an official act of the enterprise, a company act. **The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors**." *Vance, supra*, at 2442, (quoting *Ellerth, supra*, at 761-762, 118 S. Ct. 2257, 141 L. Ed. 2d 633)(emphasis added). In those circumstances, it is appropriate to hold the employer strictly liable. *See Faragher, supra,* at 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662; *Ellerth, supra*, at 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633.

2) If the harasser is a supervisor but there is no tangible employment action taken against the plaintiff, then the employer can escape liability by establishing the affirmative defense that: a) it exercised reasonable care to prevent and correct any harassing behavior; and b) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

3) if the harasser is a co-worker, the employer is liable if it acted negligently in controlling the working conditions.

In sum, because Drs. Jackson, Howard, and/or Musah are supervisors under the law per *Vance*, and that as part of the racially hostile work environment they took tangible employment actions against her, such as significantly changing her employment status, causing a significant change in her responsibilities and a significant change in her benefits

and income, all of which were ratified by the Defendant, UVI is strictly liable for the claims of workplace harassment. RSOF ¶ 3; CSOF ¶¶ 5, 7.

If the Court finds that there was no tangible employment action taken against Kantz, which is highly unlikely under the law, UVI is still vicariously liable because its President Ragster has admitted that she failed to address Kantz's and Abney's and the other professors' complaints about the racial discrimination and harassment rampant in UVI's Department of Education under Drs. Jackson, Howard and Provost Musah. Thus, Defendant cannot avail itself of the defense that it exercised reasonable care to prevent or correct the harassment.

## II. Drs. Jackson, Howard, and Provost Musah Were All Plaintiff's Supervisors Empowered to Take Tangible Employment Actions

In 2006, UVI implemented a "Master Plan, also called "Vision 2012," which was a strategic plan with goals set forth for the 2006-2012 time frame. *See* RSOF ¶ 3, . One of these goals was to "Evaluate diversity of faculty with respect to national origin, race, age, and experience within the component, and develop a plan to remediate deficiencies." *Id.* The deficiencies were to increase the number of black professors by decreasing the number of white professors. *Id.* The Provost and Division Chairs were charged with accomplishing this goal. *Id.* Once Dr. Cynthia Jackson was hired as Chair of the Education Division in August 2006, she in turn improperly hired Dr. Rita Howard, a black professor, as her Assistant Chair. *Id.* Almost immediately, both Drs. Jackson and Howard began speaking to Plaintiff and other white faculty in a degrading and ridiculing tone of voice and sent degrading emails to them and took arbitrary actions against them based on their race

<u>Kantz, Kelly v. UVI,</u> CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 7

and color in order to fulfill the goals of the Master Plan to cause them to quit. RSOF ¶ 3.

The reason behind UVI's discriminatory treatment of the white faculty, including Plaintiff, in the Education Division was because UVI was determined to achieve a higher ratio of black to white teachers at the University by getting rid of white professors. *Id.* Provost, Al Hassan I. Musah, along with Drs. Jackson and Howard, were empowered by UVI to take steps to sabotage the white professors' chances of succeeding at UVI, and this included the denial of promotion for Dr. Paul Abney, denial of tenure for Dr. Jeanette Lovern and her subsequent termination, denial of leave of absence for Dr. Abney and his subsequent termination, and constructive discharge of Dr. Kantz, all to achieve the goal of getting rid of white faculty to increase the number of black faculty under the Master Plan. RSOF ¶ 3, 35. Dr. Jackson, as Chair of the Education Division, also created a hostile work environment for Plaintiff and the other white faculty. RSOF ¶ 3;35 CSOF ¶¶ 5-7.

By 2009, UVI reported to the Board of Trustees on the progress of the Master Plan." RSOF ¶ 3. UVI reported that "three years of gains" had been made in remediating the diversity deficiencies by Fall 2008 (at which time Kelly Kantz had quit, Jeanette Lovern had been terminated, and Paul Abney had been denied promotion). *Id.* By 2008, the percentage of African American faculty at UVI increased to fifty-two percent. *Id.* The "gains" were partially accomplished through the purging of the St. Croix branch of the Division of Education of its white faculty. RSOF ¶ 3. Thus, Defendant UVI empowered Drs Jackson, Howard and Provost Musah to significantly change the Plaintiff's and other white professors employment status.

As part of UVI's purge plan, Dr. Jackson made Dr. Kantz's work life intolerable to

include but not be limited to as unilaterally changing Dr. Kantz's classes, refusing to give her supplies she needed to teach, refusing to reimburse Plaintiff for supplies she bought on her own as was the practice, unilaterally reducing her teaching load until she was scheduled to teach zero classes by the Fall 2007, refusing to give her graduate classes or summer courses to teach, reducing her student advisees, reducing her other administrative duties, all of which substantially reduced Plaintiff's compensation and constituted race discrimination, a hostile work environment and retaliation as determined by the EEOC in its Determination of December 5, 2008. RSOF ¶ 3; CSOF ¶¶ 5, 7. Dr. Jackson also refused to communicate with Plaintiff in person and would only communicate with her through demeaning rude emails. CSOF ¶ 5. Dr. Jackson's treatment and communication with the black faculty was quite the opposite with Dr. Jackson praising them, and allowing Dr. Griffith, the black professor in the Education Division on St. Croix, full access to supplies, while denying same to Plaintiff and other white faculty. RSOF ¶ 3; CSOF ¶¶ 8-9.

In October 31, 2006, Plaintiff filed a grievance against Dr. Jackson who had, without authorization, changed faculty policy so that Plaintiff would not be paid her faculty overload for teaching additional credits in Fall 2006 until the end of the Spring 2007. RSOF ¶ 3. Provost Musah resolved the issue when he attended a meeting and heard about the unauthorized change in policy. Plaintiff eventually was paid the faculty overload on December 24, 2006. However, after that grievance was filed Dr. Jackson continued to discriminate against Plaintiff by, amongst other things: 1) refusing to update or sign off on Plaintiff's Faculty Utilization Report in the Spring 2007 so that Plaintiff could get paid for an independent study course she was teaching to a graduate student; 2) giving Plaintiff a

punitive and career-destroying classroom observation report in March 2007; and 3) telling Plaintiff by email that she was no longer the advisor for students in the Inclusive Early Childhood Education Program. RSOF ¶ 3. This reduced the number of students Dr. Kantz advised from 56 to 15, fewer than any other full-time academic faculty member. *Id.* Students were falsely told that Plaintiff had been removed as their advisor because she was incompetent. *Id.* Plaintiff complained about the retaliation to Human Resources Director John Sokolski. *Id.*

Plaintiff grieved the incident with the FUR and the classroom observation review. RSOF ¶ 3; CSOF ¶ 17. Incredibly, Dr. Jackson slept for twenty (20) minutes during her alleged "classroom observation." *Id.* Plaintiff eventually did get paid under the FUR when Provost Musah updated it for her. However, she was forced to appeal the decision of Dr. Utha Williams, Dr. Musah's designee assigned to review the grievance regarding Dr. Jackson's classroom observation. RSOF ¶ 3, 13. Dr. Williams is Dr. Musah's assistant and Dr. Musah was one of the main discriminators. RSOF ¶ 3, 13. Dr. Williams ludicrously stated that Dr. Jackson's actions (of sleeping during the observation) was within university policy and that Plaintiff should write a point by point rebuttal of the review. *Id.* Plaintiff appealed to the Faculty Grievance Committee, and they held that Dr. Jackson's evaluation had to be withdrawn from the files and Plaintiff was to be given a new observation from a senior personnel. RSOF ¶ 3.

Dr. Musah then refused to allow Plaintiff the new classroom observation, which greatly impact Plaintiff chances of promotion and tenure as the classroom observation is a required step in the process. RSOF ¶ 3. Indeed, when Dr. Paul Abney was up for

<u>**Kantz, Kelly v. UVI,**</u> CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 10

promotion, the UVI Contract Committee credited a retaliatory evaluation of him from Dr. Jackson, even though three grievance committees had determined Dr. Jackson's evaluation of Dr. Abney to be retaliation for his filing complaints about Dr. Jackson and should have been removed from his file. RSOF ¶ 3. He was denied the promotion.

It was made clear to Mrs. Kantz that she would not be given fair treatment due to her race and color, and that the Administration of UVI was ratifying and acquiescing in the actions of discrimination, hostile work environment and retaliation of Ms. Jackson and Ms. Howard. *Id.;* CSOF ¶ 6. As a result, in order not to ruin her career in teaching by being denied tenure, Mrs. Kantz was forced to resign her position with UVI in August 2007. RSOF ¶ 3.

Defendant's constructive discharge of Plaintiff is another tangible employment action as were the reduction in her courses, summer classes and student supervision. *See Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 738 (W.D. Pa. 2010)("a failure to promote and a constructive discharge are ways in which a plaintiff can prove an 'adverse employment action' or a 'tangible employment action' — elements necessary to demonstrate employment discrimination claims such as hostile work environment, retaliation, or race-based discrimination.").

Thus, the evidence shows that pursuant to *Vance v Ball State Univ.,* Plaintiff was harassed by her supervisors who were empowered by UVI to take tangible employment actions against her and who did so culminating in her constructive discharge. Therefore, UVI is strictly liable for the racial harassment.

Furthermore, *Vance* confirmed that tangible employment actions by supervisors can

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 11

be subject to approval by higher management, thus even if UVI had to approve Drs. Jacksons, Howard's and Provost Musah's actions against Plaintiff, that fact does not allow UVI to escape vicarious liability for their harassment. *Vance v. Ball State Univ.*, 133 S. Ct. at 2447 (citing *Ellerth*, 524 U.S., at 762, 118 S. Ct. 2257, 141 L. Ed. 2d 633). *Vance* made clear that even where an employer centralizes its hiring and firing decisions such that these employment decisions must be approved as Defendant argues is the case here with the University President and Board of Trustees having the sole power to appoint and terminate faculty, the alleged harasser is still a "supervisor" if he or she has the "power to make employment decisions having a direct economic consequence for his victims." *Vance, supra* at 2446, FN 8 and 2447, FN 9.

Put another way, "[i]f an employer does attempt to confine decision making power to a small number of individuals, those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee." *Vance, supra*, at 2452. In the instant case, Dr. Kantz's promotion and tenure consideration relied heavily upon the classroom evaluations given by her division Chair, Dr. Jackson. RSOF ¶ 3; *see also* Kantz's Letter to Provost Musah, dated March 26, 2007, attached as **Exhibit 1**. Kantz points out provisions in the FPM, that Defendant claimed was relevant, showing that her punitive and discriminatory classroom evaluation by Professor Jackson had great significance upon her chances of promotion and consideration for tenure. *Id.* The *Vance* Court concluded that under circumstances such as these, the employer "may be held to have effectively delegated the power to take tangible employment actions to the employees on whose

recommendations it relies," such that vicarious liability is warranted. *See Vance, supra,* at 2452 (citing *Ellerth*, 524 U.S., at 762, 118 S. Ct. 2257, 141 L. Ed. 2d 663).

This Court should find that under *Vance*, UVI delegated the power to take the tangible employment action of terminating faculty to division Chairs such as Dr. Jackson, when it authorized that faculty evaluations by division Chairs, "are necessary to provide enabling direction and assistance to faculty in their attainment of promotion and tenure. . . ." **Exhibit 1 (**quoting Faculty Policy Manual).

Here, the record reveals that Dr. Jackson not only gave Plaintiff a discriminatory evaluation that Plaintiff grieved, but that Provost Musah refused to have Plaintiff re-evaluated as recommended by the Faculty Grievance Committee. Thus, Dr. Jackson's actions were ratified by Provost Musah and by President Ragster's acquiescence. Furthermore, Dr. Jackson with UVI approval, reduced Plaintiff's employment duties and responsibilities significantly until she was not scheduled to teach any classes by the Fall 2007, and denied her graduate courses to teach and a summer course load which she had previously always had, and reduced the number of her student advisees from 56 to 15, such that Drs. Jackson, Howard and Provost Musah's decisions had a direct economic consequence for Plaintiff as she attested. RSOF ¶ 3; CSOF ¶¶ 5, 7. Accordingly, the employer or UVI in this case, is vicariously liable for the supervisors' harassment. *Id.*

Moreover, the Faculty Policy Manual (FPM) that Defendant relies upon as giving authority to the President to hire and fire was obsolete and in the process of being revised, with a new Manual not becoming available until 2008 after Plaintiff was constructively discharged. Thus, the FPM did not govern the terms of Plaintiff's employment and in that

<u>Kantz, Kelly v. UVI,</u> CIVIL NO. 2008/47
<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF</u>
Page 13

way UVI also effectively delegated its powers to take tangible employment actions against Plaintiff. RSOF ¶ 13.

### III. Defendant Did Not Have Procedures in Place For Plaintiff to Grieve the Discrimination, Nor Did Defendant Exercise Reasonable Care to Prevent and Correct the Racial Harassment Inflicted Upon Plaintiff

Since UVI is strictly liable, Plaintiff need not show that she took advantage of any preventive or corrective opportunities provided by UVI. She also need not show that UVI failed to exercise reasonable care to prevent and correct the workplace harassment. Nonetheless, the evidence abundantly shows that UVI did not take any steps or use any care to stop the racially hostile work environment perpetrated by Drs. Jackson, Howard and Provost Musah against Dr. Kantz. Moreover, the evidence reveals that Defendant failed to have any procedures in preventive or corrective measures in place for Plaintiff to utilize.

#### A. Defendant Failed to Have a Grievance Procedure

First, Defendant did not have a specified grievance procedure in place in 2006-2007 that Plaintiff could utilize to have her complaints against Dr. Jackson heard. RSOF ¶ 13. Plaintiff and other faculty testified that they could not operate under the grievance procedure in the Faculty Policy Manual (FPM) from 2003 as the University had restructured and the manual was obsolete. The Manual was not revised and approved by the Board of Trustees until November 2008. RSOF ¶ 13.  Dr. Kantz explained that every grievance was handled differently and that the grievance policy in the Faculty Policy Manual was not being followed. *Id.* There were improper and unauthorized ad hoc procedures being created by Dr. Musah that differed for each grievance. *Id.* Dr. Musah even had his assistant, Dr. Utha

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 14

Williams, as the first reviewer of all complaints against Dr. Jackson, and Dr. Williams admitted this was not a normal part of the grievance procedure in the Faculty Policy Manual. *Id.*

UVI President LaVerne Ragster agreed that the Grievance structure in the FPM had changed from the one set forth in the 2003 Manual, and Provost Dr. Al-Hassan I. Musah admitted that there was no FPM applicable to Plaintiff's grievances as there were pieces of the old one from 2003 and pieces that had been approved and UVI had to come up with ad hoc procedures to handle the grievances against Dr. Jackson. RSOF ¶ 13. Thus, Defendant cannot reasonably deny liability for discrimination based on procedures and policies that it did not even have in place, and that were constantly changing.

Furthermore, Plaintiff's employment contract was subject not only to the rules and regulations of the University but also to local and federal rules such as Title VII, the V.I. Wrongful Discharge Act, and the V.I. Civil Rights Act barring an employer from discriminating against an employee. As such, claiming that Plaintiff should have utilized the grievance procedures, which were not in place, is a sham excuse and a jury could easily find that Defendant failed to have a plausible procedure to address complaints of discrimination.

### B.     Defendant Failed to Use Reasonable Care

UVI's 30(b)(6) witness, Dr. LaVerne Ragster, UVI President, testified that Plaintiff and other white faculty, such as Dr. Abney and Dr. Lovern, repeatedly complained of Dr. Jackson discriminating against them for being white and Dr. Ragster admitted that she failed to investigate or to take any action. RSOF ¶ 21. In fact, nothing at all was done to

rectify the problems and Dr. Ragster even admitted that the white faculty members were looking to her to fix the problem. *Id.* Plaintiff also complained repeatedly of the discrimination verbally to Provost Musah, to Human Resources Director John Sokolski, and to Faculty Chair David Gould. CSOF ¶ 20. Thus, contrary to Defendant's arguments, UVI was intentionally indifferent to Plaintiff's complaints of discrimination and UVI cannot avail itself of the defense that it used reasonable care to prevent and correct the harassment.

Instead, Plaintiff has produced evidence such that a reasonable fact finder could conclude that Plaintiff was subjected to "severe or pervasive" discrimination based upon her race. In *Miklos v. Principi*, 2006 U.S. Dist. LEXIS 37669, 31-32 (W.D. Pa. Mar. 16, 2006) the Court found a hostile work environment existed where the employer stripped the plaintiff of her duties and responsibilities and reassigned them to a male, then eliminated other of her duties even though there was a need for them, and criticized her unfairly and then threatened to further reduce her job duties. *Id.* Likewise, in this case, Plaintiff was unfairly stripped of her teaching and administrative duties, her classes that were still needed were eliminated and/or reassigned to black faculty, and Plaintiff was taken completely off the Fall 2007 schedule. In addition, she was unfairly criticized in Jackson's October 28, 2006 email with a copy to Provost Musah and Jackson gave her an unfair evaluation in March 2007 that was found to be retaliatory but not removed from her file. *See* RSOF ¶ 3. Thus, as the Third Circuit found in *Miklos*, this Court should similarly find that Plaintiff was subjected to a hostile work environment.

Defendant is strictly liable as the hostile, pervasive tangible actions were all committed by Plaintiff's supervisors, the Chair of the Education Division, Dr. Jackson, and

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 16

the Provost of the University, Dr. Musah, and approved by UVI President Ragster who refused to take any action when Plaintiff and other white faculty complained to her. RSOF ¶ 21; CSOF ¶ 5.2 Thus, Plaintiff has easily shown "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." *Andrews v. City of Philadelphia*, 895 F.2 1469, 1482 (3d Cir. 1990).

**WHEREFORE,** for the reasons stated above, Plaintiff respectfully request that the Court DENY Summary Judgment for Defendant UVI.

                                                 RESPECTFULLY SUBMITTED,

                                                 LEE J. ROHN AND ASSOCIATES, LLC
                                                 Attorneys for Plaintiff(s)

DATED: August 23, 2013             BY:   s/ *Lee J. Rohn*
                                                          Lee J. Rohn
                                                          VI Bar No. 52
                                                          1101 King Street
                                                          Christiansted, St. Croix
                                                          U.S. Virgin Islands 00820
                                                          Telephone: (340) 778-8855
                                                          Fax: (340) 773-2954

---

2 *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.").

**Kantz, Kelly v. UVI,** CIVIL NO. 2008/47
**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
Page 17

## CERTIFICATE OF SERVICE

     **THIS IS TO CERTIFY** that on August 23, 2013, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Marie E. Thomas-Griffith, Esquire
    Hall & Griffith
    P.O. Box 305587
    St. Thomas, VI  00803-5587
    Email Address: mt@viaaccess.net
       Attorney For: UVI

                        BY: ___s/ *Lee J. Rohn*___(mtc)